United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ryan D. Gesten, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-22541-Civ-Scola |
| | ) |
| Burger King Corporation d/b/a | ) |
| Burger King, Defendant. | ) |

### Order on Defendant's Motion to Dismiss

Plaintiff Ryan Gesten brings this putative class action against Burger King Corporation, doing business as Burger King ("Burger King"), for alleged violations of the Fair and Accurate Credit Transactions Act ("FACTA"). This matter is before the Court on the Defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 12). For the reasons set forth below, the Court **grants** the motion to dismiss.

1. **Background**

On June 13, 2017, Gesten made a purchase at a Burger King restaurant using his personal credit card. (Compl. ¶¶ 31-32, ECF No. 1.) The receipt for his purchase displayed the first six and the last four digits of his credit card account number. (*Id.* ¶ 32.) The receipt also identified that the card was a debit card and the institution that issued the credit card (i.e. Visa, American Express, etc.). (*Id.* ¶ 33.)

On July 7, 2017, Gesten filed this suit, alleging that Burger King violated FACTA, which prohibits printing more than the last five digits of a credit card number or the expiration date on a receipt. (*Id.* ¶ 57.) Gesten alleges that he was subject to a heightened risk of identity theft and that his private information was exposed as a result of the FACTA violation. (*Id.* ¶ 63.) Gesten alleges that similar violations have taken place at dozens of Burger King's restaurants, and seeks to represent a class of all persons in the United States who made a payment at a Burger King restaurant using a credit card and received a receipt displaying more than the last five digits of the card number and/or the expiration date. (*Id.* ¶¶ 36, 44.) Gesten seeks statutory damages, punitive damages, attorneys' fees and costs, and injunctive relief. (*Id.* at 14-15.) Burger King has moved to dismiss this case for lack of subject matter jurisdiction, arguing that Gesten has not alleged an injury in fact and therefore lacks standing to pursue his claim.

## 2. Legal Standard

Because the question of Article III standing implicates subject matter jurisdiction, it must be addressed as a threshold matter prior to the merits of any underlying claims. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). Article III of the Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." U.S. Const. Art. III § 2. The doctrine of standing is a "core component" of this fundamental limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *Hollywood Mobile Estates Ltd.*, 641 F.3d at 1265 (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006)). A plaintiff has standing to bring a claim if the following three elements are met: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560 (citations omitted). At the pleading stage, the plaintiff must clearly allege facts demonstrating each of these elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations and citations omitted).

Burger King contests only the first element. An injury in fact is "an invasion of a legally protected interest which is (1) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S. Ct. at 1548 (internal quotations and citations omitted). For an injury to be concrete, the "injury must be 'de facto'; that is, it must actually exist." *Id.* An injury need not be tangible in order to be concrete. *Id.* at 1549.

The United States Supreme Court's decision in *Spokeo, Inc. v. Robins* clarified the standing requirements implicated in lawsuits where plaintiffs are afforded statutory damages for violations of federal statutes. 136 S. Ct. 1540. The Court noted that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. The Court held that while "a bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement, a "risk of real harm" can satisfy the injury-in-fact requirement. *Id.* (citations omitted). Thus, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact; in such a case, a plaintiff need

not allege any *additional* harm beyond the one identified by Congress." *Id.* (emphasis in original) (citations omitted).

"[A] dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991)). Motions to dismiss a complaint for lack of subject matter jurisdiction can consist of either a facial or factual attack on the complaint. *Id.* (citing *McElmurray v. Consol. Gov't of Augusta – Richmond Cnty*, 501 F.3d 1244, 1250 (11th Cir. 2007)). A facial attack requires the court to "merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," whereas a factual attack "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233-34 (citing *McElmurray*, 501 F.3d at 1251). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Id.* at 1232 (citations omitted).

### 3. Analysis

Congress enacted FACTA in 2003 as an amendment to the Fair Credit Reporting Act ("FCRA"), in response to the increasing threat of identity theft. *See, e.g.*, *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 725 (7th Cir. 2016). FACTA prohibits printing "more than the last five digits of the credit card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Any person who willfully fails to comply with this requirement is liable for statutory damages ranging from $100 to $1,000, punitive damages, and attorneys' fees and costs. 15 U.S.C. § 1681n(a).

The Eleventh Circuit has not had occasion to consider the question of standing in a case involving a violation of FACTA. However, the Second Circuit and several district courts have held that the printing of the first six digits of a credit card account number on a receipt does not constitute an injury in fact because the first six digits merely identify the institution that issued the card, and are not part of the consumer's unique account number. *Katz v. Donna Karan Company, L.L.C.*, No. 15-464, 2017 WL 4126942, at *5 (2nd Cir. Sept. 19, 2017) (holding that district court did not err in finding that printing the first six digits of a credit card number on a receipt did not result in a "material risk of identity theft absent other allegations of harm."); *Kamal v. J. Crew Grp., Inc.*, 2017 U.S. Dist. LEXIS 91080, at *10-14 (D.N.J. June 13, 2017) (holding that the printing of the first six digits of a credit card number does not violate any recognized privacy interest nor does it increase the risk of future harm since the first six digits relate to the bank or card issuer); *Noble v. Nev. Checker*

*Cab Corp.*, No. 2:15-cv-02322, 2016 U.S. Dist. LEXIS 110799, at *7-9 (D. Nev. Aug. 19, 2016) (citing *In re Toys "R" Us FACTA Litig.*, Nos. MDL 08-01980, CV 06-08163, CV 08-06645, 2010 WL 5071073, at *11 (C.D. Cal. Aug. 17, 2010) (same). Since Congress has not prohibited the printing of the issuing institution on a credit card receipt, courts have held that such a technical violation does not result in the type of harm that Congress sought to prevent when it enacted FACTA, since the first six digits "gives an identity thief no more personal information about a person's account than Congress has permitted to be printed on receipts." *Katz*, 2017 WL 4126942, at *5 (noting that printing the first six digits "is the equivalent of printing the name of the issuing institution, information which need not be truncated under FACTA"); *Noble*, 2016 U.S. Dist. LEXIS 110799 at *9-10; *Kamal*, 2017 U.S. Dist. LEXIS 91080 at *12.

In addition, the Seventh and Second Circuits, as well as multiple district courts, have held that under *Spokeo*, a plaintiff does not have standing to pursue a FACTA claim if the plaintiff has not suffered any actual harm or a material risk of harm. *See, e.g., Crupar-Weinmann v. Paris Baguette America, Inc.*, 861 F.3d 76, 81-82 (2nd Cir. 2017) (holding that plaintiff failed to allege that the printing of expiration date on her receipt posed a material risk of harm to her); *Meyers*, 843 F.3d at 727-29 (holding that the allegations did not demonstrate that the plaintiff suffered any harm or any appreciable risk of harm since the plaintiff discovered the violation immediately and nobody else saw the receipt.); *Hendrick v. Aramark Corp.*, No. 16-4069, 2017 U.S. Dist. LEXIS 59474, at *12-13 (E.D. Pa. April 18, 2017) (holding that merely alleging an increased risk of identity theft due to the printing of ten digits of credit card account number on receipt was insufficient to establish injury in fact where plaintiff was in possession of the receipt and no one else had seen it); *Paci v. Costco Wholesale Corp.*, No. 16-cv-0094, 2017 WL 1196918, at *3 (N.D. Ill. Mar. 30, 2017) (holding that having to store a receipt in a safe place was insufficient to establish injury in fact where the first six and last four digits of a credit card account number were printed on the receipt); *Stelmachers v. Verifone Sys.*, No. 5:14-cv-04912, 2016 U.S. Dist. LEXIS 162081, at *9-10 (C.D. Cal. Nov. 21, 2016) (holding that plaintiff did not have standing to pursue FACTA claim where more than five digits of his credit card account were printed on a receipt, but no one other than the plaintiff received a copy of the receipt); *Thompson v. Rally House of Kan. City*, No. 15-00886, 2016 U.S. Dist. LEXIS 146146, at *12-13 (W.D. Mo. Oct. 6, 2016) (holding that plaintiff did not have standing to pursue FACTA claim based on the printing of the first six and last four digits of his credit card account number because "there is no real risk of harm as the improper receipt has only been in Plaintiff's possession since receiving it from Defendants.").

Similar to the cases cited above, Gesten does not allege that anyone saw the receipt other than Burger King's employees, nor has he disputed that the first six digits of his credit account number identify the issuing institution. (Pl.'s Resp. in Opp. at 14 fn. 13, ECF No. 14). Thus, Gesten has only alleged a technical violation of FACTA. The Second Circuit has noted that, in light of *Spokeo*, "[a] central inquiry . . . is whether the particular bare procedural violation may present a material risk of harm to the underlying concrete interest Congress sought to protect." *Crupar-Weinmann*, 861 F.3d at 80-81. Based on the case law described above, the answer is a resounding no.

However, as Gesten notes, there are several opinions from district courts within the Eleventh Circuit that have utilized a different inquiry and reached a different conclusion. These cases hold that "FACTA creates a substantive right for consumers to have their personal credit card information truncated on printed receipts," and that therefore a plaintiff has standing to pursue a claim for a violation of this right absent any additional showing of harm. *Bouton v. Ocean Props., Ltd.*, 201 F.Supp.3d 1341, 1352 (S.D. Fla. 2016) (Bloom, J.) (holding that plaintiff had standing to pursue claim that the defendant violated FACTA by printing expiration date of credit card on receipt); *Wood v. J Choo USA, Inc.*, 201 F.Supp.3d 1332, 1340 (S.D. Fla. 2016) (Bloom, J.) (same); *Flaum v. Doctor's Assocs., Inc.*, 204 F.Supp.3d 1337 (S.D. Fla. 2016) (Altonaga, J.) (same); *Guarisma v. Microsoft Corp.*, 209 F.Supp.3d 1261, 1264 (S.D. Fla. 2016) (Altonaga, J.) (holding that defendant's violation of FACTA by printing the first six and last four digits of a credit card account number on a receipt constituted a "concrete injury in and of itself" absent any additional showing of harm)[1]; *Altman v. White House Black Market, Inc.*, No. 15-cv-2451, 2016 WL 3946780, at *6-7 (N.D. Ga. July 13, 2016) (same).

Each of these opinions either relied on *Guarisma v. Microsoft Corp.*, which in turn relied on *Hammer v. Sam's E., Inc.*, an Eighth Circuit opinion decided before *Spokeo*, or relied directly on *Hammer*. *See, e.g., Wood*, 201 F.Supp.3d at 13376 (discussing *Guarisma* at length); *Altman*, 2016 WL 3946780, at *4 ("This Court reached its conclusion after reviewing persuasive authority, specifically the Eighth Circuit's decision in *Hammer* . . . ."). In *Hammer*, the Eighth Circuit stated that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*," and held that an alleged violation of FACTA constituted an injury in fact in and of itself because FACTA "gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number." 754 F.3d 492, 498 (8th Cir. 2014) (emphasis in original)

---

[1] The court did not discuss the fact that the first six digits of a credit card number identify the issuing institution.

(internal citations omitted). However, the Eighth Circuit subsequently recognized that *Spokeo* superseded *Hammer*, noting that *Spokeo* requires that "[a] concrete injury must 'actually exist,' and it must be 'real,' not 'abstract'". *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 929-31 (8th Cir. 2016) (quoting *Spokeo*, 136 S.Ct. at 1548) (holding that the plaintiff's allegation that the defendant violated the Cable Communications Policy Act by failing to destroy the plaintiff's personally identifiable information after he canceled his cable services did not have standing because the plaintiff did not allege that the information had been disclosed to third parties or used in any way). Therefore, several courts outside of this circuit have questioned the reliance of courts within this circuit on *Guarisma* and *Hammer*. *See, e.g. Batra v. RLS Supermarkets* LLC, No. 3:16-cv-2874-B, 2017 WL 3421073, at *5 fn.4 (N.D. Tex. Aug. 9, 2017) (stating that the cases from this circuit are unpersuasive because they rely in part on *Hammer*); *Lewellyn v. AZ Compassionate Care Inc.*, No. 16-04181, 2017 WL 1437632, at *3 (D. Ariz. April 24, 2017) (explicitly disagreeing with the courts in this circuit holding that FACTA confers a substantive right); *Cruper-Weinmann v. Paris Baguette America, Inc.*, 235 F.Supp.3d 570, 576 n.3 (S.D.N.Y. 2017) (noting that "there is reason to question these cases' basis for concluding that FACTA confers such a substantive right," since *Altman* and *Guarisma* rely on *Hammer*, and *Wood* relies entirely on *Guarisma* and *Altman*).

The conclusion of district courts in this circuit that the violation of a substantive right created by Congress is sufficient on its own to confer standing on a plaintiff is contrary to the holding of *Spokeo*. Although *Spokeo* did note that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," 136 S.Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578), the *Spokeo* Court specifically cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S.Ct. at 1549; *see also Meyers*, 843 F.3d at 727 (noting that, under *Spokeo*, "Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury."). The *Spokeo* Court then went on to state that a risk of real harm can, in certain circumstances, satisfy the requirement of concreteness. *Id.* at 1549. In such cases, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original) (citations omitted).

As support for that proposition, the Court cited to two cases that both involved a plaintiff's inability to obtain information that was required by federal

law to be publicly disclosed. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) ("The injury of which respondents complain – their failure to obtain relevant information – is injury of a kind that FECA seeks to address . . . Given the language of the statute and the nature of the injury, we conclude that Congress, intending to protect voters such as respondents from suffering the kind of injury here at issue, intended to authorize this kind of suit."); *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) ("refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue"). Essentially, no additional showing of harm was required because in both instances Congress had given every citizen the right to obtain the information. These cases did not hold that an injury does not need to be concrete if it violates a statutory right; rather, the cases held that the inability to obtain the information was in itself a concrete injury.

In contrast to the injuries presented in right-to-information cases, the *Spokeo* Court specifically stated that "[a] violation of one of the FCRA's procedural requirements may result in no harm." 136 S.Ct. at 1550. The Court provided the following example:

> [E]ven if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* In remanding the case, the Supreme Court directed the Ninth Circuit to decide "whether the particular procedural violations in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.*

In applying *Spokeo* to determine standing in other contexts, the Eleventh Circuit has recognized that the Supreme Court "emphasized that in addition to being particularized, intangible injuries, including statutory violations, must still be concrete." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017). In a post-*Spokeo* opinion holding that an alleged violation of the Video Privacy Protection Act constituted a concrete injury in and of itself, the Eleventh Circuit noted that the statute "subjects a video service provider to liability only when that provider actually discloses the consumer's personal information. Supreme Court precedent has recognized in the privacy context that an individual has an interest in preventing *disclosure* of personal information." *Perry*, 854 F.3d at 1340-41 (emphasis in original) (citations

omitted). In addition, in an unpublished post-*Spokeo* opinion, the Eleventh Circuit recognized that, "through the [Fair Debt Collection Practices Act], Congress has created a new right – the right to receive the required disclosures in communications governed by the FDCPA – and a new injury – not receiving such disclosures." *Church v. Accretive Health, Inc.*, 654 Fed. App'x. 990, 994 (11th Cir. 2016) (holding that an allegation that a plaintiff did not receive required disclosures under 15 U.S.C. §§ 1692e(11) and 1692g(a)(1)-(5) is sufficient to demonstrate that the plaintiff suffered a concrete injury). Accordingly, this Court held that an alleged violation of the right to receive truthful representations of the character and amount of a debt under the FDCPA was sufficient on its own to confer standing on the plaintiff, because Congress had determined that each person is entitled to such information. *Bacardi v. Select Portfolio Servicing, Inc.*, No. 16-23381, ECF No. 54 (S.D. Fla. April 4, 2017) (Scola, J.). However, this Court held that a debt collector's failure to list a plaintiff's account as "disputed by consumer" on his credit report, as required by the FDCPA, was insufficient to confer standing because the plaintiff had failed to show an actual injury as a result of the violation. *Higgens v. Trident Asset Mgmt., LLC*, No. 16-24035, 2017 WL 1230537, at *2 (S.D. Fla. Mar. 28, 2017) (Scola, J.) (noting that "Congress's prohibiting certain debt-collector conduct is not equivalent to Congress's having created a new private right altogether.").

  This case presents a perfect example of a procedural violation that may result in no harm, in contrast to the examples of statutory violations that constitute concrete injuries in and of themselves. "'FACTA arose from a desire to prevent identity theft that can occur when card holders' private financial information, such as a card holder's complete credit card number, is exposed on electronically printed payment card receipts.'" *Guarisma*, 209 F.Supp.3d at 1266 (quoting *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333 (S.D. Fla. 2009), *rev'd in part*, 444 Fed. Appx. 370 (11th Cir. 2011)) (additional citations omitted). Contrary to the other courts within this circuit to have considered the issue, the Court does not find that this legislative history demonstrates an intent to create a right of recovery in every case in which FACTA is violated, regardless of whether a consumer's private financial information is actually exposed. Rather, the Court finds persuasive the Northern District of California's observation that "[i]dentity theft does not become certainly impending through a procedural violation of FACTA . . . ." *Stelmachers*, 2017 WL 3968871, at *4.

  In addition, the Court notes that since the passage of FACTA, Congress has expressed concern over the number of lawsuits alleging a violation of FACTA in which there is no allegation of actual harm. In 2008, Congress passed the Credit and Debit Card Receipt Clarification Act (the "Clarification

Act"), which included a finding of fact that following the passage of FACTA, hundreds of lawsuits were filed alleging that the failure to remove the expiration date from receipts was a willful violation of FCRA, even where the account number was properly truncated. Pub. L. 110-241 § 2(a)(4), H.R. 4008, 110th Cong. (2008), codified at 15 U.S.C. § 1681n(d). After noting that none of these lawsuits "contained an allegation of harm to any consumer's identity," Congress specifically stated that its purpose in passing the Clarification Act was "to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business . . . ." *Id.* §§ 2(a)4-5, 2(b). Therefore, anyone who printed an expiration date on a receipt between December 4, 2004 and June 3, 2008 was not liable for willful noncompliance with FACTA. *Id.* § 3.

At least one district court in this circuit found that neither the substantive provisions of the Clarification Act nor the intent behind it applied to causes of action arising after June 3, 2008. *See, e.g., Wood*, 201 F.Supp.3d at 1339. However, the Court finds that Congress's stated purpose in passing the Clarification does shed light on the proper interpretation of FACTA. That Congress found the need to ensure that lawsuits brought under FACTA seek to remedy actual harm reinforces this Court's finding that FACTA's legislative history does not evince an intent to create a *de facto* concrete injury in every instance in which FACTA is violated. The fact that the Clarification Act was temporary does not completely eviscerate the persuasiveness of the findings of fact on which the act was based. Indeed, both the Seventh and Second Circuits relied on the findings of fact in the Clarification Act in analyzing whether a violation of FACTA is sufficient on its own to confer standing. *See, e.g., Crupar-Weinmann*, 861 F.3d at 81 (finding the Clarification Act's finding that truncation of the credit card number, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft to be "dispositive" in determining that the plaintiff did not have standing to pursue a "bare procedural violation of FACTA"); *Meyers*, 848 F.3d at 727-78 (noting that in passing the Clarification Act Congress was "quite concerned with the abuse of FACTA lawsuits").

Gesten argues that the disclosure of one's private information is a concrete harm that has long been recognized by courts, and that FACTA recognizes a right of privacy not to have credit card account information exposed. (Pl.'s Resp. in Opp. at 4, ECF No. 14-15.) However, Gesten has not shown that any disclosure of his private information actually occurred. Since Gesten took possession of the receipt at the time of the transaction (*see* Compl. ¶ 32), the "heightened risk of identity theft" alleged in the Complaint is a risk that has not, and could not, materialize in this instance. Although Gesten

alleges that the information was disclosed to Burger King employees, this "disclosure" is no different than the "disclosure" that happens any time a consumer uses a credit card to pay for a transaction. It is not the type of harm that Congress identified in enacting FACTA. Moreover, the additional digits of his account number that were displayed are digits that multiple courts have recognized identify only the issuer of the card. Gesten alleges that the issuing institution was separately printed on the receipt, and Congress has not prohibited the printing of the issuing institution on receipts. Therefore, the Court finds that Gesten has not alleged that any additional private financial information was displayed beyond that included in the last five digits of his credit card account number, nor has he alleged that such information was disclosed to anyone other than the employees who handled his transaction.

Based on the foregoing analysis, this Court must join the numerous courts outside of this circuit holding that a plaintiff does not have standing to pursue a FACTA claim absent an allegation of actual harm or a material risk of harm. Gesten's alleged injury is precisely the type of abstract injury that *Spokeo* held was insufficient to satisfy the requirement of concreteness. *See Spokeo*, 136 S.Ct. 1548 ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'").

### 4. Conclusion

Accordingly, the Court **grants** the Defendant's motion to dismiss (**ECF No. 12**). The Complaint is hereby **dismissed without prejudice** for lack of subject matter jurisdiction.

**Done and ordered** in chambers, at Miami, Florida, on September 27, 2017.

_____
Robert N. Scola, Jr.
United States District Judge